Argued and submitted May 18, at North Medford High School, Medford, Oregon, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings July 29, 2010

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# DANA JO WILLIS,
*Petitioner on Review.*

(CC CFH060180; CA A134794; SC S057879)

236 P3d 714

Garrett A. Richardson, Multnomah Defenders, Inc., Portland, argued the cause for petitioner on review.

Erika L. Hadlock, Senior Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

GILLETTE, J.

## GILLETTE, J.

This is a criminal case in which defendant was convicted after a jury trial of the crime of unlawful possession of a controlled substance—in this case, methamphetamine. Defendant appealed her conviction to the Court of Appeals, asserting that the trial court erred in admitting a scientific report authored by a state police criminalist that identified a particular substance seized from defendant as methamphetamine. (The criminalist was not present to testify.) The state conceded that the admission of the report without supporting testimony from the criminalist was error, but asserted that the error was harmless. The Court of Appeals agreed and affirmed defendant's conviction. *State v. Willis*, 230 Or App 215, 213 P3d 1286 (2009). We allowed defendant's petition for review and, for the reasons that follow, now reverse the decision of the Court of Appeals and the judgment of the trial court.

We take our statement of facts from the opinion of the Court of Appeals:

"Officer Washburn of the Hermiston Police Department went to a convenience store to investigate a report that some people had not paid for food that they had eaten. Upon arrival, Washburn saw defendant and two other people at the store and, after a brief encounter, arrested defendant for disorderly conduct. After advising defendant of her *Miranda* rights and before taking her to the police station, Washburn asked defendant if she had any contraband. Defendant briefly hesitated and then said, 'Yes, she had some stuff.' Washburn removed defendant's handcuffs in the presence of another officer. Defendant reached under her sweatshirt and into her bra and pulled out a vial and a bindle of marijuana. It appeared to Washburn that the vial was a Chanel perfume container; however, Washburn had not seen perfume in the crusted and dried form that he saw in the vial, and it was his belief, 'not absolute,' that the vial contained crystal methamphetamine. The [Oregon State Police crime] laboratory report later identified the contents of the vial as methamphetamine. [At her trial, d]efendant sought to exclude the laboratory report, asserting that admission of the report without also producing its author violated her Sixth Amendment right to confront witnesses.

The trial court admitted the report over defendant's objection.

"Washburn testified at trial that he recognized the substance in the vial as methamphetamine. At the time of the trial, Washburn had been a police officer for 14 years and had had extensive training as a drug recognition expert and training relating to drug-impaired drivers and methamphetamine labs. Most of the training pertained to methamphetamine. In 1998 and 1999, when he was with the Hillsboro Police Department, Washburn had received awards for making the most arrests in the State of Oregon for drug-impaired driving."

*Id.* at 217-18. A jury convicted defendant of unlawful possession of a controlled substance, methamphetamine.

Defendant appealed her conviction to the Court of Appeals, arguing that, under this court's decision in *State v. Birchfield*, 342 Or 624, 157 P3d 216 (2007), admission of the laboratory report without requiring the author of the report to testify concerning it was reversible error. The state conceded that admission of the report without the supporting testimony was error, but urged the Court of Appeals nonetheless to affirm defendant's conviction because, the state asserted, the error in admitting the report was harmless. The Court of Appeals agreed with the state. It reasoned:

"[A]side from an undeveloped challenge in closing argument, defendant did not seriously dispute whether the substance in the vial was methamphetamine. * * * In the overall context of the case, including Washburn's testimony that the vial, concealed in defendant's bra, contained methamphetamine and defendant's admission to Washburn that she had contraband, and in the absence of an attempt on defendant's part to contend that the contents of the vial was anything other than methamphetamine, * * * [citation omitted], we conclude that there is little likelihood that the admission of the report affected the jury's verdict, and that the error was harmless * * *."

*Willis*, 230 Or App at 223. As noted, we allowed defendant's petition for review.

In this court, the parties focus not on whether there was a *Birchfield* error—as noted, the state conceded that

point—but on whether the error was harmless. As a preliminary matter, we focus on two separate statements by the Court of Appeals on which the state relies. The state first points to the Court of Appeals' statement that, "aside from an undeveloped challenge in closing argument, defendant did not seriously dispute whether the substance in the vial was methamphetamine." The state also endorses the Court of Appeals' observation that there was no "attempt on the part of defendant to contend that the contents of the vial [were] anything other than methamphetamine."

We respectfully disagree with both of those statements. It is true that the defendant did not give a great deal of attention to the identification of the contents of the vial, either in her closing argument or elsewhere in the trial. However, she did contest that identification, most notably in the following statements by her lawyer in closing argument:

"Is [the evidence that the jury had heard, including the unexplained laboratory report] enough? Is that enough for you the jury to believe—to know, to know beyond a reasonable doubt that that was the substance tested and that that was the result of the test?

"Is that enough for you ladies and gentlemen, to know beyond a reasonable doubt that the proper tests were done, that the error rate of those tests performed did not fall outside of accepted tolerances for these tests?

"Is that enough for you to know, ladies and gentlemen, in sum, [that] the white junk in the bottle is methamphetamine? Is that enough?"

In our view, the quoted statements establish that defendant made an issue of each element of the charged offense, including the identity of the alleged controlled substance. The Court of Appeals' characterization of defendant's argument thus was mistaken.

We also take issue with the second part of the reasoning of the Court of Appeals on which the state relies, *i.e.*, that court's assertion that there was no "attempt on the part of defendant to contend that the contents of the vial [were] anything other than methamphetamine." Defendant was not required to contend that the vial's contents were "anything other" than methamphetamine; defendant bore no burden of

proof or persuasion in the proceeding. She was entitled to content herself with arguing that the state had not proved by the requisite degree of persuasiveness that the contents of the vial *were* what they were alleged to be. The contrary statement of the Court of Appeals thus was improper. With those preliminary observations in mind, we return briefly to a review of our decision in *Birchfield*.

■ ■   In *Birchfield*, this court held that a statute, ORS 475.235 (2001), which made criminalist reports like that involved in this case *prima facie* evidence of the criminalist's findings and gave criminal defendants the right to subpoena and cross-examine the criminalist who authored the report, denied defendant his right of confrontation under Article I, section 11, of the Oregon Constitution. *Birchfield*, 342 Or at 631-32.[1] Because the law on that point is clear, we agree with the parties that the trial court's contrary ruling in the present case was error. The remaining issue is whether the error is one that requires reversal of the trial court's judgment or whether, instead, the error was "harmless"—*i.e.*, whether this court is of the opinion "that the judgment of the court appealed from was such as should have been rendered in the case." Article VII (Amended), section 3, of the Oregon Constitution.

■   Under Article VII (Amended), section 3, of the Oregon Constitution, an appellate court must "affirm a conviction, notwithstanding any evidentiary error, if there is little likelihood that the error affected the verdict." *State v. Gibson*, 338 Or 560, 576, 113 P3d 423, *cert den*, 546 US 1044 (2005). The court's inquiry

> "must focus 'on the possible influence of the error on the verdict rendered, not whether this court, sitting as a fact-finder, would regard the evidence of guilt as substantial and compelling.' * * * That inquiry requires us to examine the nature of the error that occurred below and the context of that error. * * * If the particular issue to which the error pertains has no relationship to the jury's determination of

---

[1] The Supreme Court of the United States reached a similar conclusion under the Sixth Amendment in *Melendez-Diaz v. Massachusetts*, 557 US ____, 129 S Ct 2527, 174 L Ed 2d 314 (2009).

its verdict, then there is little likelihood that the error affected the verdict."[2]

*Id.* (citations omitted).

In the present case, the indictment charged that defendant,

"on or about October 17, 2005, in Umatilla County, Oregon, did unlawfully and knowingly possess methamphetamine, a schedule II controlled substance * * *."

Such possession is a Class C felony. ORS 475.894. Both parties appear to recognize—and we agree—that the specification in the indictment that the controlled substance that defendant possessed was "methamphetamine" required the state to prove beyond a reasonable doubt that the substance in the vial seized from defendant was, in fact, methamphetamine and not some other substance.

The state relied on the following evidence to prove the identity of the substance in the vial: (1) The fact that defendant produced the substance in response to Washburn's question whether she possessed "contraband"; (2) the appearance of the substance itself; (3) Officer Washburn's "belief" (which he admitted was "not certain") that the substance that he saw in the vial was methamphetamine; and (4) the laboratory report that declared that the substance was, in fact, methamphetamine. As already noted, defendant properly and timely objected to admission of the laboratory report without the supporting testimony of the criminalist who had prepared it, but that objection was erroneously overruled.

When the erroneous ruling is examined in context, its significance is apparent: The report went to "the heart of * * * the case." *State v. Davis*, 336 Or 19, 34, 77 P3d 1111 (2003) (using that description to explain why certain evidentiary error is not harmless). The state had no witness who could affirmatively identify the substance in the vial as methamphetamine. Defendant's verbal act in giving up the substance established only that it was "contraband." The only

---

[2] The foregoing statement of the law does not purport to establish a separate or different inquiry when the evidence in question is, as it is in this case, scientific evidence. The test is equally applicable whether the evidence in question is scientific or ordinary.

witness even to suggest that the substance was methamphet-amine was Washburn, and he admitted that he was not sure. The substance was not self-identifying, as certain other sub-stances might be—the substance could have been metham-phetamine, but it also could have been, *inter alia*, cocaine, or heroin, or a harmless white crystalline substance. Without the laboratory report, that was all the evidence that the state had. We certainly cannot say that the evidence that the sub-stance was methamphetamine was overwhelming.

In light of the other evidence in this case, a chemical analysis was necessary to establish the identity of the sub-stance in the vial in a persuasive way, which presumably is why the state offered the laboratory report. Science either can turn suspicion into probability, or it can establish that the substance was not the specific controlled substance alleged in the indictment (or, indeed, was not a controlled substance of any kind). Any juror would wish to have the sci-entific answer, and could be expected to give it weight. Far from being able to say, on this record, that there was "little likelihood" that any error in admitting the laboratory report "affected the verdict," we conclude that there was a high like-lihood that the improperly received report *did* affect the ver-dict. The error was not harmless.[3] The contrary conclusion of the Court of Appeals was incorrect.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[3] In so holding, we leave open the possibility that, on a different record, erro-eous admission of a laboratory report could be harmless.